FREDERICK C. MACTAGGERT v. HENRY S. HENRY. SAME v. JEREMIAH LEAYCRAFT and others. SAME v. GEORGE F. PENISTON and others.

A charter party, which does not give the charterer entire control of the vessel, nor postpone the payment of the charter money beyond the delivery of the cargo, does not divest the general owner of his lien for freight, nor of his right to collect the same.

Although the master of the vessel, being the agent of the general owner, waive the lien by delivering the goods without demanding the freight; such general owner may afterwards compel the consignee to pay it.

Where the charter party is of the character above mentioned; the payment of the freight, by the consignee of the goods to the general owner of the vessel, is a bar to any claim therefor by the charterer, although the latter, before the payment, may have given formal notice to the consignee, not to pay the same to the owner.

THESE actions were prosecuted by the plaintiff, as charterer of the brig "Ophir," to recover from the respective defendants the freight of certain goods transported therein from the island of Jamaica to New York. The goods were all shipped under ordinary bills of lading, to be delivered to the defendants, respectively, or their assigns, they paying freight at a specified rate, with primage, etc.

The charter party, under which the plaintiff claimed the freight, was executed by one Baker H. Booker, as master and agent for the owners. It was agreed therein that the vessel should be freighted and chartered to the plaintiff for a voyage from the port of New York to Kingston and Black River, Jamaica, and back to New York; that during the voyage she should be kept "tight, stanch, well fitted, tackled, and provided with every requisite, and with men and provisions necessary for such a voyage;" that the whole of the vessel, excepting the cabin and the necessary room for the accommodation of the crew, and of the sails, cables, and provisions, should be at the sole disposal of the charterer; that all such lawful goods as the charterer might deem proper to ship should be received on

Mactaggert *v.* Henry.

board; that the charterer should provide the vessel with cargoes sufficient for ballast, and should pay, "for the charter or freight of the vessel," $1,300, with all foreign port charges, including pilotage, lighterage, consul's fee, etc., "one half the charter to be considered due and payable on discharge of outward cargo, the balance on delivery of cargo at New York." The usual allowance of time was made for loading and discharging at the different ports, with provision for demurrage at a specified rate per day in case of detention. Other stipulations, not material to the questions involved, were added, with a covenant for faithful performance of all the parties, in the penal sum of $1,000.

The suits were all tried in the Marine Court. In the first case, after putting in evidence the charter party and the bill of lading of the goods upon which the freight was claimed, the plaintiff proved the amount of freight earned, and that the defendant received the goods from the vessel, on her return voyage from Jamaica; that after the delivery of the goods to him, he received a notice from the plaintiff that he was the charterer of the "Ophir," and forbidding the payment of the freight to the captain; that subsequently, notwithstanding such notice, the defendant paid the freight to the captain; that after all the cargo of the vessel was delivered, a balance remained due to the general owners from the charterer, for the charter money, which balance was demanded and payment thereof refused by him.

The evidence, with variations merely as to the several amounts due for freight, was substantially the same in all the suits, except that in the first case the goods were delivered upon the promise of the defendant to pay the freight to the captain, while in the other two the testimony was silent on that point, and except, also, that in the first case only, the defendant at the time of making payment to the captain, received a guaranty from him against any claim for freight that might thereafter be made.

The plaintiff recovered a judgment in each case, and from each judgment an appeal was prosecuted to this court.

*Erastus C. Benedict*, for the defendants, made the following points :

I. There was no contract between the plaintiff and the defendant proved. The only contract to which the defendant was a party, was the bill of lading, and that was a contract with the master and owners of the brig.

II. The plaintiff was not owner of the vessel. (*Vide* the Volunteer, 1 Sumn. 551 ; *Palmer* v. *Gracie*, 4 Wash. C. C. Rep. 110 ; *Clarkson* v. *Edes*, 4 Cowen, 470 ; Abbott on Ship. marg. p. 289, and notes.)

III. The master of the vessel had a lien upon the goods and a right to the freight, and to enforce such right against the defendant. (Abbott on Ship. part iv. chap. 2, p. 287, and cases there cited.) Such payment is a bar to the claim of a charterer, or owner, even. (Abbott, marg. p. 420 ; *Shaw* v. *Thompson*, Judge Betts's MSS.)

IV. The plaintiff had refused to perform the charter on his part, and had no connection whatever with the vessel or right to demand freight. He cannot claim to be owner by virtue of payment which he has refused to make.

V. The master and owners of the brig were the only persons entitled to claim freight of the defendant. The charter was a contract between the plaintiff and them, to which the defendant was not a party. His (the plaintiff's) only right was against the owners of the brig upon the charter.

*William B. Wedgewood*, for the plaintiff, made the following points :

I. There was a contract between the plaintiff and defendant proved. The charter party of the brig " Ophir " was introduced and duly proved. The plaintiff was proved to be the charterer. The freight was admitted or proved to have been earned by the brig " Ophir " on her return voyage from Jamaica. An ordinary bill of lading cannot be a contract to supersede the charter party in this suit under all the circumstances here proved.

Mactaggert *v.* Henry.

II. The question whether the plaintiff was the owner or not of the brig " Ophir," cannot enter into the controversy in this case. But if it does, he was owner by virtue of fulfilling the charter party in every particular, until the goods were fully delivered in New York to the defendant. The plaintiff paid one half the charter money in Jamaica, which was endorsed on the charter party. The remainder was not due and owing, nor to be paid, until all the homeward cargo was delivered, and the delivery of the homeward cargo was a condition precedent to the payment of the last half of the charter money.

III. The master of the vessel had no lien on the goods for freight. The case cited in 4 Cow. p. 476, is in favor of the plaintiff in this suit. On page 481 it is said, " If the payment of the charter party money is put off until after the delivery of the goods, the charterer takes precedence, even without notice not to pay by the charterer." In this case the payment of the charter party money was put off until after the delivery of the goods, and, moreover, the defendant was duly notified and forbidden to pay the freight to the captain. And after such notice, and after a guaranty from the captain, the defendant paid the freight to him.

IV. If the delivery of the goods had not been a condition precedent to the payment of the charter party money, as expressed in the charter party, the captain, having delivered the goods before making the demand for the charter party money, had relinquished his lien by such delivery, and he could not thereafter collect such freight with any more right than he could collect any other debt due the plaintiff, and apply the same to the payment of the charter party. Any such payment could be no bar to the plaintiff's claim. The plaintiff fulfilled his contract fully and to the very letter, until after the goods were fully delivered to the defendant, and the transaction, as between the plaintiff and the defendant, had been fully completed.

V. The plaintiff had a right to require the captain and owners to show that they had performed their part of the contract before he paid the last half of the charter party money. If

the captain and owners had refused to take freight or goods when the brig was not full, or had in any other manner violated their part of the charter party, the charterer had a right to test that question on an action against him for the charter party money. The only remedy of the captain and owners was by such action after they had twice relinquished their lien— once by the terms of the charter party, and once by delivering the goods. The judgment should be affirmed with costs.

*Erastus C. Benedict*, for the defendants, in reply.

I. The respondent states that there was a contract between the plaintiff and the defendants. He does not however show it. It could not have been the charter party, because that is a contract between Captain Booker and the plaintiff. It could not have been the bills of lading, because they are contracts between Captain Booker and the defendants; no other contract is in the case. The bills of lading are the only contract by which the defendants are bound to pay freight at all, and by them they were bound to pay it, not to the plaintiff but to Captain Booker, and this they did.

II. The question, who was owner for the voyage is decisive of this case, as it was of the case of *Clarkson* v. *Edes* in 4 Cow. 476. And as to that question, the cases cited by the appellants are conclusive. The respondent was not the owner even on the ground claimed by him. He had not " fulfilled the charter party." He had refused to pay the balance due after all the cargo was delivered.

III. The master's lien on the goods for his freight is unquestioned, as also his right to sue the defendants on the bills of lading, and to recover it. Says Judge Betts in the case of *Shaw* v. *Thompson*, before cited, " The right of the master to retain the goods until his lien for freight had been satisfied, and to sue the consignees after delivery to them of the goods, and recover the freight earned, at least to the amount due on the charter, cannot be questioned."

The statement of the respondent that the case in 4 Cow.

476, is in his favor, is a most extraordinary one. The quotation which he claims to make from it is, no doubt, in his favor, but no such quotation can be found in the case, nor have I been able to find any such in any other case. That case holds a doctrine diametrically opposite. In that case, as here, there was a dispute between the charterer and the master of the vessel as to who should receive the freight. The consignee paid it to the charterer, instead of, as in this instance, to the master, and was thereupon sued by the master and compelled to pay it again to him. And on the same grounds, if the defendants in this case had paid the freight to the plaintiff, they would still have been obliged to pay it again to Captain Booker. They cannot therefore be compelled now to pay it to the charterer. If payment to the charterer is no defence to a suit by the master, surely payment to the master must be a defence to a suit by the charterer. All our merchants who receive goods by chartered vessels, cannot surely be liable in all cases to pay freight twice over. The case of *Shaw* v. *Thompson* before cited is yet stronger on this point. In that case, the charterer owing a small sum to the consignees, they paid him the balance deducting their debt in the master's presence. The master received a part of it from the charterer, and afterwards sued the consignees on the bills of lading. Judge Betts thereupon says, " The consignees had no right to pay the freight to the charterer, or to retain out of it the balance due them from the charterer; but so far as the libellant consented to the payment to the charterer, such payment would in law be deemed made to himself." And so in this case, if Captain Booker had assented to the payment of the freight to the charterer, he could not have recovered it again in a suit against the defendants, but not having assented, the defendants would have " no right to pay the freight to the charterer," and the master could recover it of them again, if they had done so. It has even been held in the case of *White* v. *Baring*, 4 Esp. 22, that the consignee was liable to the master for the freight, where he had paid it to the owner of the vessel even, after notice from the master. And in the case of *Christy*

v. *Row*, 1 Taunt. 300, where the master had failed to get the freight from the consignees, it was held that he could recover it from the charterer.

IV. The three cases stand on the same footing so far as the receipt of the goods by the defendants under the bills of lading was concerned. "The receipt of goods by a general ship under the usual bill of lading (by which it is expressed that they are to be delivered to the consignee or his assigns, he or they paying freight for them) is evidence of a contract by the person so receiving them, to pay the freight due upon them." (Abbott on Ship. marg. p. 421.) The defendants all received goods under the bills of lading, and all agreed thereby to pay freight to the master, and the defendant Henry, in addition, gave his verbal promise to pay it to him before the goods were delivered. They could not be discharged from that agreement by the notice of the plaintiff, any more than a man is relieved from paying his promissory note, by receiving a notice from a third party not to do so.

The whole case then stands thus: The defendants had not agreed to pay the freight to the plaintiff. They had agreed to pay it to the master. The plaintiff had refused to perform his agreement with the master, which performance was the only possible ground of his ever claiming anything of the defendants. The master had given the consignees no consent to their payment of the freight to the plaintiff, without which "they had no right to pay it to him." If they had paid it to the plaintiff they would have had to pay it again to the master; and the master in that case could also have recovered it in a suit against the plaintiff himself. The judgment should be reversed with costs.

By THE COURT. INGRAHAM, FIRST J.—The plaintiff was the charterer of a brig to Jamaica and back, and brought, on the return voyage, goods for the defendants on freight. The goods, upon the arrival of the vessel at this port, were delivered to the defendants respectively, without payment of the freight at the time. Before such payment was made, the charterer gave

notice to the defendants not to pay to the captain, but to him.

The defendants in the first suit, at the time the goods were delivered, promised to pay the captain, and the freight was paid to him in all cases.

The plaintiff, the charterer, brings these actions to recover the freight from the defendants. In the court below the plaintiff obtained judgment in each case.

There can be no doubt that payment to the captain at the time of delivery of the goods, or in pursuance of a promise made to the captain as a condition of the delivery, is a valid payment, in compliance with the terms of the contract, contained in the bills of lading. Without such payment of freight to the captain, the defendants were not entitled to the possession of the goods. The right, however, to receive the freight at the time, and as a condition of the delivery, may, as it seems to have been in at least two of these three cases, be waived; and the question then arises, whether the owner or the charterer has a right to collect the freight.

This depends upon the form and provisions of the charter party itself. If by it the owner gives up to the charterer the entire control and management of the vessel, he is, for the time being, the owner, and as such is entitled to the freight as well as all other control and direction of the vessel during the existence of the charter party.

But if, by the charter party, the owner still retains the control and management of the vessel, subject to the special agreement made by him with the charterer as to the freight, then he still retains his character as owner, and if so, may collect the freight. Such is the rule as laid down in *Marcaidin* v. *The Chesapeake Insurance Company*, 8 Cranch, 49, which has been sanctioned by our own courts.

In order to ascertain what the relation of the parties is, we must refer to the terms of their contract, and by it the care and custody of the vessel, as well as the manning and government thereof, is left with the owners. They are to provide crew and provisions; they engage that a part of the vessel,

which is specified, shall be at the disposal of the plaintiff; they further agree to receive on board the plaintiff's goods, and the charterer agrees to furnish cargo sufficient for ballast.

It must be apparent to any one who reads this instrument, that the intent of the parties was not to deliver the vessel over to the charterer, but to take from him on freight such cargo as he saw fit to offer, binding themselves to hold the whole of the vessel except certain secured portions subject to their order. The owners still had the charge of the vessel, were bound to man, provision, and sail her, and in all other things, except as to carrying freight for the charterer, they were in no different position than other owners carrying goods on freight for others. I think there can be no doubt of the proposition that, under such a state of facts, the charterer cannot be considered as the owner for the voyage. He is not liable for many things which as owner he would be responsible for, and he cannot claim the rights of the owner without assuming his liabilities.

Having arrived at this conclusion as to the nature and effect of the charter party, the question whether the owner may collect the freight is settled by the case of *Clarkson* v. *Edes*, 4 Cow. 470. In that case it is decided that the owner may maintain an action for the freight in the name of the master, even when such freight is claimed by the charterer. In the language of Judge Savage, "The general owner has the claim and lien for freight, and that must continue unless the owner has parted with it, either by constituting the charterer owner for the voyage, or by postponing payment beyond the time when the goods are to be delivered."

The first point thus stated I have already examined. The last payment by the charterer, in the present case, is to be made on delivery of the cargo at New York. It is not postponed beyond the time of the delivery of the goods, but is to be simultaneous therewith. (See also 2 B. and A. 511; 1 J. R. 238; 8 Wheat. 605.)

A case similar, in all respects, to the present was decided in the Superior Court, recognizing the same rules. (*Holmes* v. *Pavenstedt*, 5 Sand. Sup. Ct. R. p. 97.

In that case, as here, the consignee paid freight to the agent of the owners, and the charterer sought to recover it again from them, and it was held that the general owners, not having parted with the entire control of the vessel, retained their lien for the freight, and that payment to the owner was a good answer to any claim by the charterer.

These views dispose of the questions raised in these cases. The judgments given by the court below are erroneous, and must be reversed and judgment of dismissal of complaint ordered.

Judgment reversed, and judgment ordered for the defendants in each case.